REIDINGER, District Judge,
dissenting:
Because I believe that the district court clearly erred in finding that Relator *358 Vuyyuru’s allegations were “based upon” a public disclosure and that he was not an “original source” of these allegations, I respectfully dissent.
I.
As the majority correctly states, § 3730(e)(4)(A) is a “jurisdiction-removing provision,” citing Rockwell International Corp. v. United States, 549 U.S. 457, 468, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007). (Opinion at 348). A defendant may challenge subject matter jurisdiction of a FCA claim via a Rule 12(b)(1) motion to dismiss in one of two ways. First, a defendant may contend “that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based,” Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982), i.e., a “facial attack,” Garcia v. Copenhaver, Bell & Associates, M.D. ’s, P.A., 104 F.3d 1256, 1260-61 (11th Cir.1997). When a defendant makes a facial attack upon a complaint for lack of subject matter jurisdiction, “all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.” Adams, 697 F.2d at 1219. Alternatively, the defendant may contend that the complaint’s jurisdictional allegations simply are not true, id., i.e., a “factual attack,” Garcia, 104 F.3d at 1260. When a factual attack is made, the burden is on the plaintiff to prove the existence of subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991). When a defendant challenges the factual basis of a complaint’s jurisdictional allegations, the district court may “go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.” Adams, 697 F.2d at 1219. In so doing, the district court “may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment.” Id.
As a threshold matter, it is problematic to ascertain whether the district court undertook to conduct a facial or factual review of the challenge to subject matter jurisdiction in this case. The majority readily concludes that the district court’s review was factual. (Opinion at 354-55). With this, I feel compelled to disagree in part. As to the question of whether Relator Vuyyuru’s allegations are “based upon” a public disclosure, the district court considered extrinsic evidence consisting of the Virginia Times articles, and thus clearly undertook a factual review. When it moved to the question of whether Relator Vuyyuru was an “original source” of the information giving rise to the allegations, however, the district court was not so clear as to whether it undertook a factual or facial review. The district court repeatedly refers to the allegations found in the “complaint” or the “TAC” (Third Amended Complaint) while asserting that Relator Vuyyuru “consistently has failed to provide specific facts” about these allegations. (J.A. 562). Ultimately, the district court holds that “[i]n light of the generalities and conclusory statements that permeate the TAC [Third Amended Complaint] and the plaintiffs briefs on the jurisdictional issue, the Court cannot making [sic] a finding that plaintiff had ‘direct’ knowledge of the allegations in the TAC apart from what appeared in the public domain well before the TAC was filed.” (J.A. 564). Based on this language, one can only conclude that the district court made its decision based on the allegations rather than the evidence and thus conducted only a facial examination regarding the issues of whether Relator Vuyyuru had “direct and *359 independent knowledge of the information on which the allegations are based.” 31 U.S.C. § 3730(e)(4)(B).[1]
The district court having undertaken such a hybrid review may not, of itself, constitute error, but it at least requires that the review of these portions of the district court’s order be conducted independently of one another, applying the different standards of review under Adams.
II.
This Court has held that “a relator’s action is ‘based upon’ a public disclosure of allegations only where the relator has actually derived from that disclosure the allegations upon which his qui tarn action is based.” United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1348 (4th Cir.1994) (emphasis added). The majority concludes that “the district court logically reasoned that ‘[t]he remarkable similarities between the news article and the allegations contained in [paragraphs 20 and 27 of the Third Amended Complaint] are significant proof that the latter are ‘actually derived’ from the former.’ ” (Opinion at 350) (quoting J.A. 558) (emphasis added). I disagree.
Siller instructs that finding allegations to be “based upon” a public disclosure requires more than a finding of similarity between the public disclosure and the complaint’s allegations. “[I]t is self-evident that a suit that includes allegations that happen to be similar (even identical) to those already publicly disclosed, but were not actually derived from those public disclosures, simply is not, in any sense, parasitic.” Id. As the Siller Court noted, this Court’s interpretation of the “based upon” requirement differs from other circuits. Id. (“We are aware ... that other circuits have not embraced this interpretation of the phrase, assuming instead that an action is based upon a public disclosure of allegations if its allegations are identical or similar to those already publicly disclosed.”). While other circuits may disagree with this approach, Siller remains the law in this circuit. Accordingly, I would hold that the district court committed clear error in finding that the similarities between Relator Vuyyuru’s allegations and the newspaper articles constituted proof that the allegations were “based upon” a prior public disclosure.
I also do not agree with the majority’s suggestion (Opinion at 350-51) that to overcome this “significant proof’ Relator Vuyyuru had to produce evidence to show that he was, in fact, the source of the newspaper articles. Under Siller, whether Relator Vuyyuru was the source of the newspaper articles is not relevant; what matters is whether he has produced evidence to show that his allegations were not “actually derived from” this public disclosure. Moreover, imposing this requirement upon a relator appears at odds with the Supreme Court’s decision in Rockwell. See 549 U.S. at at 470-72, 127 S.Ct. 1397 (holding phrase “information on which the allegations are based” refers to information on which the relator’s allegations are based, not information on which publicly disclosed allegations are based).
The district court concluded that Vuyyu-ru “consistently has failed to provide specific facts about how he obtained knowl *360 edge of the fraudulent acts alleged in the [Third Amended Complaint].” (J.A. 562). It is significant that the district court held that Relator Vuyyuru “failed to provide” evidence, rather than finding his evidence to be unpersuasive. This demonstrates that the district court concluded that Relator Vuyyuru failed to make a prima facie showing to support subject matter jurisdiction. This was error because the evidence before the district court was sufficient to support a conclusion that Relator Vuyyuru had carried his burden of demonstrating that his knowledge of the alleged fraudulent acts was not “based upon” public disclosure.
The Third Amended Complaint sets forth on its face a basis for Relator Vuyyu-ru’s knowledge separate and apart from the public disclosure. Specifically, Relator Vuyyuru alleges that he learned that Dr. Jadhav had performed unnecessary biopsies by reviewing Dr. Jadhav’s medical records and from medical staff who had observed Dr. Jadhav’s practices. Relator Vuyyuru further alleges that he discovered that Dr. Jadhav failed to complete colonos-copy procedures (despite billing for complete procedures) through his review of Dr. Jadhav’s charts and through his own subsequent examinations of a number of Dr. Jadhav’s patients. Relator Vuyyuru specifically alleges that during these examinations, he discovered lesions, polyps, and cancer which would have been detected had Dr. Jadhav in fact performed complete colonoscopy procedures.
Relator Vuyyuru also presented the district court with declarations that include significant evidence regarding the manner in which Relator Vuyyuru obtained knowledge of the fraudulent acts alleged in the Third Amended Complaint. For example, in a declaration filed in support of his original complaint, Relator Vuyyuru testifies that his knowledge of the complaint’s allegations was based upon personal observation, information provided to him by medical staff, patients, patients’ families, and his review of medical records. In his supplemental declaration, Relator Vuyyuru further clarifies the basis of knowledge of the complaint’s allegations separate and apart from the public disclosure of these claims in the media. Specifically, he testifies that from 1997 through 2005, he personally monitored and investigated Dr. Jadhav’s work. Relator Vuyyuru makes clear that he personally reviewed Dr. Jad-hav’s medical charts and specifically observed from this review that Dr. Jadhav had a practice of regularly performing unnecessary biopsies of the IC-valve. Relator Vuyyuru further testifies that in his investigation of Dr. Jadhav’s medical charts, he observed that Dr. Jadhav never performed a biopsy of the IC-valve when he was able to bill for removing a polyp or other legitimate pathology, a practice which Relator Vuyyuru contends constitutes evidence that the biopsies of the IC-valve were done solely to increase billing. Relator Vuyyuru further testifies that he interviewed pathologists at both JRMC and SRMC, who confirmed Dr. Jadhav’s practices regarding IC-valve biopsies. Vuyyuru also states in his supplemental declaration that he learned about Dr. Jad-hav’s allegedly fraudulent billing from his personal interviews of the individuals who performed billing services for Dr. Jadhav as well as through the subsequent colonos-copy procedures Relator Vuyyuru performed on several of Dr. Jadhav’s patients during which he found polyps and tumors that Dr. Jadhav would have observed had complete colonoscopy procedures been performed on these patients.
Based upon this evidence regarding the manner in which Relator Vuyyuru obtained knowledge of the fraudulent acts alleged in the Third Amended Complaint, I would hold that the district court erred in *361 concluding that the allegations in the Third Amended Complaint were “based upon” the public disclosure.
III.
Next, the majority holds that the district court did not err in finding that Relator Vuyyuru was not an “original source” of the Third Amended Complaint’s allegations. I disagree for a number of reasons.
The district court limited its analysis on this issue to a review of the allegations in the Third Amended Complaint. Thus, even though the district court had before it evidence purporting to support Relator Vuyyuru’s contention that he was an original source, the district court concluded that subject matter jurisdiction did not lie based on a facial analysis of the pleadings. The district court, however, failed to construe the allegations in the Third Amended Complaint as true and did not afford Vuyyuru any of the other protections available under a Rule 12(b)(6) review. See Adams, 697 F.2d at 1219 (stating that when facial attack is made, “all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration”). Had the district court’s facial analysis been conducted in accordance with Adams, and Relator Vuyyuru’s allegations been taken as true, the allegations in the Third Amended Complaint would have been sufficient to show that he acquired knowledge of the alleged fraudulent acts “through his own efforts, [and] without an intervening agency.” United States ex rel. Grayson v. Advanced Mgmt. Tech., Inc., 221 F.3d 580, 588 (4th Cir.2000) (quoting United States ex rel. Detrick v. Daniel F. Young, Inc., 909 F.Supp. 1010, 1016 (E.D.Va.1995)). Therefore, the district court’s order dismissing this action pursuant to Rule 12(b)(1) was in error.
Furthermore, had the district court undertaken to conduct a factual review and considered the evidence presented by Relator Vuyyuru, sufficient evidence was presented for Relator Vuyyuru to have carried his burden of demonstrating that he was an original source of the allegations. As detailed above, Relator Vuyyuru presented the district court with declarations that include significant evidence regarding the manner in which Vuyyuru obtained direct and independent knowledge of the fraudulent acts alleged in the Third Amended Complaint.[2]
The district court further found that Relator Vuyyuru’s allegation in the Third Amended Complaint that he “notified government authorities” to be non-specific and conclusory and thus insufficient to show that he voluntarily provided this information to the Government before filing the action. (J.A. 564). Again, the district court found itself torn between conducting *362 a facial analysis and a factual analysis by looking only to the allegations pleaded while applying the factual analysis standard. The district court failed to treat as true the allegations of notice to the government, but rather analyzed the allegations as though they were evidence and found them inadequate, while not considering the declarations submitted by Relator Vuyyuru on this issue. In his declaration of October 24, 2006, Relator Vuyyuru asserts that he reported these allegations of fraud to the FBI (J.A. 364) (“[i]n and around 2002, 2003, and 2004, I spoke with FBI Agents Vanosten and Irons regarding the improper medical procedures and Medicaid and Medicare Fraud by Dr. Jad-hav, SRMC and JRMC”); the Attorney General’s Office (J.A. 364) (“in and around 2002 and 2003, I spoke with the Attorney General’s Office with a representative responsible for investigating Medicaid Fraud regarding the improper medical procedures by Dr. Jadhav and billing fraud at both SRMC and JRMC”); and the Center for Quality Health Care (J.A. 364) (“in 2003, I filed a complaint with the Board of Medicine against Dr. Jadhav regarding unnecessary procedures, but was directed to Center for Quality Health Care”). This declaration alone is sufficient to establish that Relator Vuyyuru “voluntarily provided the information to the Government before filing an action under this section which is based on the information.” 31 U.S.C. § 3730(e)(4)(B).[3]
IV.
The majority analyzes Relator Vuyyu-ru’s evidence of his direct and independent knowledge very differently from the district court but still finds it wanting. The majority concludes that “there is a glaring lack of evidence to establish that, at the time Relator Vuyyuru filed this action ..., he had direct and independent knowledge that any Defendant in this case had ever presented or caused to be presented a particular false or fraudulent claim to the government or that he had voluntarily provided the government with such information before filing this action.” (Opinion at 353). Specifically, the majority concludes that “Relator Vuyyuru never connected his knowledge of any underperformance of medical care by Dr. Jadhav with an actual claim upon the public fisc by any of the Defendants.” (Id. at 353) (emphasis in original). In short, the majority requires that the Relator prove the particulars of the individual Medicare or Medicaid claims in order to prove how he had direct and independent knowledge of the facts giving rise to those claims. The question of source of knowledge, however, is separate from the underlying merits. Whether a FCA claim is “ultimately flawed on the merits is an analytically distinct question from the one mandated by the FCA for establishing jurisdiction.” Kennard v. Comstock Resources, Inc., 363 F.3d 1039, 1047 (10th Cir.2004) (quoting United States ex rel. Stone v. Rockwell Int’l Corp., 282 F.3d 787, 803 (10th Cir.2002)). Indeed, to hold that Relator Vuyyuru’s Third Amended Complaint fails for lack of subject matter jurisdiction because he has not pled his FCA claims with sufficient specificity would mean that the jurisdictional question is necessarily intertwined with the merits of the case. If the majority is correct, and sufficient evidence of the facts *363 of the underlying FCA claims must be presented in order for the relator to be able to show how he came to possess such knowledge, then the jurisdictional issue is in fact intertwined with the factual issues of the underlying claims, and the district court was required to assume jurisdiction and proceed to decide the case on the merits. “When a factual attack on subject matter jurisdiction involves the merit of a dispute, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiffs case.” United States v. North Carolina, 180 F.3d 574, 580 (4th Cir.1999) (quoting Garcia v. Copenhaver, Bell & Assocs., M.D.’s, P.A., 104 F.3d 1256, 1261 (11th Cir.1997)) (internal quotation marks and alterations omitted).
Given the substantive deficiencies identified by the majority, it may well be that Relator Vuyyuru’s claims would not withstand Rule 12(b)(6) scrutiny. This appeal, however, does not require the Court to decide whether Relator Vuyyuru has stated a claim upon which relief can be granted, but rather to review only the basic threshold assessment of subject matter jurisdiction under § 3730(e)(4). If we allow a case such as this to cause us to set the jurisdictional bar too high, then legitimate FCA claims may go without redress and may even go unfiled.
V.
Because I believe that the district court’s dismissal was in error, I would also vacate the district court’s award of attorneys’ fees to the Defendants. Moreover, even if the finding of a lack of subject matter jurisdiction were sustained, I would still reverse the award of attorneys’ fees. Attorneys’ fees may be awarded under § 3730(d)(4) upon a finding “that the claim of the person bringing the action was clearly frivolous.... ” 31 U.S.C. § 3730(d)(4). For all of the reasons set forth above, I simply do not believe that Relator Vuyyuru’s jurisdictional allegations are “clearly” frivolous.
There is no question that the record presented to the district court was convoluted, due in no small part to the voluminous and oftentimes inartfully drafted filings, and it must have appeared at times that this action was little more than a grudge match between the Relator and the Defendants. The presentation of the facts may have been awkward, and there may well be some substantive flaws in the Relator’s claims. At bottom, however, this is a case about a physician who undertook to investigate the medical procedures and billing practices of another physician and the medical facilities at which he worked and found what may well constitute Medicare and Medicaid fraud. Even if such claims may ultimately prove to be frivolous, such frivolousness falls short of the standard of being “clear” based on this record. I would, therefore, vacate the award of attorneys’ fees as having been an abuse of discretion.
VI.
Accordingly, I would vacate the orders of the district court dismissing this action for lack of subject matter jurisdiction and awarding the Defendants attorneys’ fees and would remand this matter for further proceedings.

. The majority quite reasonably buttresses its view of the nature of the district court's review by pointing out that Relator Vuyyuru also argues that the district court's review was factual in nature (Opinion at 352 n. 6), and that the transcript of the proceedings below supports this conclusion as well. It is, however, the disposition of that issue that is before this Court for review, and that disposition is found in the Memorandum Opinion. I believe that the Memorandum Opinion reflects that the nature of the district court's decision was an inappropriate hybrid of a facial and factual review.

. The majority concludes that Relator Vuyyu-ru could not be “a direct and independent source with respect to any allegations of fraud involving SRMC or its facilities after March 2003, because, by that time, Relator Vuyyuru had withdrawn from practicing medicine at SRMC.” (Opinion at 352). The majority notes that the district court learned this information through “colloquy with counsel,” (id. at 346), but significantly, as the majority points out (Opinion at 352-53 n. 7), there is conflicting evidence submitted on this point. Moreover, the transcript of the hearing reveals that Relator Vuyyuru's counsel stated that he was suspended from SRMC in March 2004, while it was the Defendants’ counsel who asserted that Vuyyuru was dismissed from SRMC in March 2003. I would not hold such a failure to respond during an attorney colloquy to amount to a concession. In addition, Relator Vuyyuru’s supplemental declaration, which was cited by the majority (Opinion at 345), states that he was on the medical staff at SRMC "until 2004.” (J.A. 428).

. A subsequent declaration by Relator Vuyyu-ru, filed after the district court's ruling on the motion to dismiss, provides even more detail regarding his contact with the government regarding these allegations. Relator Vuyyuru states in this declaration that he began his discussions with the United States Attorney in October 1998 and met with several FBI agents from 1998 to 2005. He further asserts that in 2003, he was given a letter providing him certain "protections” related to his cooperation with the government. (J.A. 662).